UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENNIS LOUIS RUELLO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-895 |
| JP MORGAN CHASE BANK, N.A. | SECTION "R" (1) |

### ORDER AND REASONS

Defendant AMR Lawn and Landscaping, LLC ("AMR"), moves for summary judgment on SMS Assist L.L.C.'s ("SMS") third-party complaint for defense costs and indemnification for plaintiff's claims.[1] AMR also moves for summary judgment on SMS's third-party claim that AMR is required to name SMS as an additional insured on AMR's general liability policy.[2] SMS opposes the motion.[3] For the reasons stated below, the motion is denied in part and granted in part.

---

[1] R. Doc. 43. AMR, citing Federal Rule of Civil Procedure 56, captions its motion as a motion to dismiss. R. Doc. 43 at 1. AMR asserts that it is entitled to a judgment as a matter of law and submits a list of uncontested facts. The Court construes AMR's motion as a motion for summary judgment.
[2] R. Doc. 43-2.
[3] R. Doc. 45.

## I. BACKGROUND

This case arises from a slip and fall. Plaintiff, Dennis Ruello, contends that he slipped and fell while exiting the JP Morgan Chase, N.A. Bank located at 1415 Metairie Road, Metairie, Louisiana, 70005 on May 18, 2018 (the "Bank").[4] Ruello alleges that his left foot came in contact with a sprinkler head at the edge of the Bank's lawn, which caused his fall.[5]

On May 21, 2019, Ruello filed suit in state court alleging that JP Morgan Chase Bank, N.A.'s ("JP Morgan") negligence caused the accident and resulting injuries.[6] On March 13, 2020, JP Morgan removed to federal court, contending that it had received materials from plaintiff indicating that the requirements of diversity jurisdiction under 28 U.S.C. § 1332 were satisfied.[7]

On July 29, 2020, JP Morgan filed a third-party complaint against SMS.[8] The third-party complaint alleges that, before Dennis Ruello's alleged injury, JP Morgan entered into a contract with an entity called CBRE, Inc., to perform maintenance and inspection of sprinklers at the Bank.[9] JP

---

4    R. Doc. 1-2 at ¶¶ II-IV.
5    *Id.* at 1 ¶ IV.
6    *Id.* at 2 ¶ VI.
7    R. Doc. 1 at 2-4, ¶¶ 5-17.
8    R. Doc. 23.
9    *Id.* at 1-2 ¶ IV.

2

Morgan alleges that CBRE in turn entered into a contract with SMS, under which SMS was obligated to perform maintenance and inspection of the sprinklers at the Bank.[10] In addition, JP Morgan asserts that, under the CBRE-SMS contract, SMS is required to defend and indemnify both CBRE and JP Morgan for plaintiff's personal injury claims.[11]

On September 25, 2020, SMS filed a third-party complaint against AMR.[12] SMS asserts that it entered into a contract with AMR under which AMR was required to perform full maintenance of any irrigation systems at the Bank.[13] SMS asserts that, under the AMR-SMS Affiliate Master Service Agreement ("Agreement"), AMR must indemnify SMS for any and all claims relating to AMR's work.[14] In addition, SMS alleges that AMR was required to procure general liability coverage and to name SMS as an insured on that policy.[15]

AMR moves for summary judgment on SMS's third-party complaint.[16] AMR asserts that the Louisiana Anti-Indemnity Act ("LAIA"), La. Rev. Stat. § 9:2780.1, requires that SMS's third-party complaint against AMR be

---

[10] *Id.* at 2 ¶ V.
[11] *Id.* at 2 ¶ VI.
[12] R. Doc. 34.
[13] *Id.* at 2 ¶ 4.
[14] *Id.* at 2 ¶ 5.
[15] *Id.* at 2 ¶ 6.
[16] R. Doc. 43.

3

dismissed with prejudice.[17]  Specifically, AMR seeks a judgment from the Court declaring that (1) the indemnification provision in the Agreement is void and (2) the provision requiring AMR to name SMS as an additional insured on its liability insurance is void.  The Court considers the motion below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."

---

[17]    R. Doc. 43-2 at 3.

4

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at

5

325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.   DISCUSSION

### A.   The Louisiana Anti-Indemnity Act

In 2010, the Louisiana Legislature enacted the Louisiana Anti-Indemnity Act ("LAIA"), La. Rev. Stat. § 9:2780.1. The LAIA governs indemnification clauses in "construction contracts" and "motor carrier transportation contracts." La. Rev. Stat. § 9:2780.1. The LAIA provides:

> [A]ny provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee

6

> from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

La. Rev. Stat. § 9:2780.1(B).

In addition, the LAIA voids contractual provisions that require an indemnitor to procure liability insurance covering the acts or omissions of the indemnitee. The LAIA provides:

> Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.

La. Rev. Stat. § 9:2780.1(C). AMR relies on both §§ 9:2780.1(B) and 9:2780.1(C) to assert that various provisions in the Agreement are void. The Court considers AMR's arguments in turn.

### B.  The Agreement is a Construction Contract

The LAIA applies only to construction contracts and motor carrier transportation contracts. *See* La. Rev. Stat. § 9:2780.1. As a preliminary matter, the Court must determine whether the Agreement falls into either

7

one of those categories. AMR asserts the Agreement is a construction contract.[18] The LAIA defines "[c]onstruction contract" as:

> [A]ny agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property.

La. Rev. Stat. § 9:2780.1(A)(2)(a). In *Atl. Specialty Ins. v. Phillips 66 Co.*, 790 F. App'x 598, 600 (5th Cir. 2019), the Fifth Circuit interpreted the LAIA's definition of "construction contract." The *Phillips* court noted that the contract at issue, which involved maintenance work on a natural gas pipeline, qualified as a construction contract, because the natural gas pipeline could qualify as a "gas line," "structure," or an "improvement" within the meaning of the LAIA. *Id.* The *Phillips* court noted that the LAIA defined the term construction contract "capaciously." *Id.*

Here, the Agreement indicates that AMR is to perform "Landscaping Services" at the Bank.[19] Those services include, for example, AMR's

---

[18]    *Id.* at 5.
[19]    *Id.* at 18.

obligation to mow and trim the Bank's lawn to certain specifications,[20] prune and shape vegetation,[21] and perform weed removal and pest control.[22] In addition, the Agreement indicates that AMR must perform "Irrigation Services" which "requires that [AMR] be responsible . . . for the maintenance" of "[i]rrigation systems."[23] The Agreement indicates:

> The full maintenance of any existing irrigation systems shall include full maintenance service for all parts and labor and spring start-up and winterization and shall be the responsibility of [AMR]. [AMR] shall be responsible to abide by all water usage regulations as imposed by the local water district.[24]

The Court finds that there is no genuine issue of material fact on this issue; the Agreement is a "construction contract." First, the LAIA's definition of construction contract includes the "maintenance" of "improvement[s] to real property." La. Rev. Stat. § 9:2780.1(A)(2)(a). Under Louisiana law,[25] the landscaping of trees, bushes, and other vegetation constitutes an "improvement" to real property. *See State Through Dep't of Highways v. Blair*, 285 So. 2d 212, 215 (La. 1973) (noting that trees, plants, and shrubs on

---

[20]  R. Doc. 43-3 at 18.
[21]  *Id.* at 19.
[22]  *Id.* at 21.
[23]  *Id.* at 18.
[24]  *Id.* at 20.
[25]  There is no dispute that Louisiana law governs this dispute. R. Doc. 43-2 (citing Louisiana law and federal cases applying Louisiana law); R. Doc. 45 (citing Louisiana law).

the property were improvements); *Reagan v. Reagan*, 250 So. 3d 1122, 1134 (La. App. 2 Cir. 2018) (considering landscaping to be an "improvement"); *Leblanc v. Trappey*, 838 So. 2d 860, 864 (La. App. 3 Cir. 2003) (noting that the "prevailing meaning" of "improvement" includes "landscaping"), *writ denied*, 842 So. 2d 1107 (La. 2003); *State through Dep't of Highways v. Bernard*, 271 So. 2d 303, 307 (La. Ct. App. 3 Cir. 1972) (noting that "trees constitute . . . an 'improvement', similar to a building or a fence"); *see also* La. Civ. Code art. 493 (referring to "improvements" as "[b]uildings, other constructions permanently attached to the ground, and *plantings made on the land*" (emphasis added)); *cf. Hartford Ins. of Midwest v. Am. Automatic Sprinkler Sys.*, 201 F.3d 538, 543 (4th Cir. 2000) (noting that landscaping is an "improvement to real property").

Second, the parties agree that the Agreement requires AMR to perform full maintenance of any existing irrigation systems. The Court notes that "maintenance" of a "water line" is also included within the definition of a "construction contract." La. Rev. Stat. § 9:2780.1(A)(2)(a). The obligation to perform "full maintenance" on "any existing irrigation system" would include any maintenance to an existing "water line" on the property. *Cf. Phillips 66 Co.*, 790 F. App'x 598, 600 (5th Cir. 2019) (reasoning that "a natural gas pipeline is fairly encompassed in the 'gas line' provision of the

statute"). Thus, the Court finds that there is no genuine issue of material fact that the Agreement is a "construction contract" within the meaning of LAIA.

## C. The Indemnification and Defense Provision

SMS sued AMR for "full defense costs and indemnity" in the event that SMS is held liable.[26] AMR moves for summary judgment on that claim.[27] In doing so, AMR states that the defense-and-indemnity provisions in paragraph 21[28] of the Agreement are void under § 9:2780.1(B).

The determination AMR asks the Court to make at the summary judgment stage is premature. Case law interpreting the "almost indistinguishable" Louisiana Oilfield Indemnity Act (LOIA), La. Rev. Stat. § 9:2780, is persuasive. *See Louisiana United Bus. Ass'n Cas. Ins. v. J & J*

---

[26] R. Doc. 33 at 2 ¶ 7.
[27] R. Doc. 43.
[28] The provision in the Agreement cited by AMR indicates as follows:

> 21. INDEMNIFICATION. [AMR] shall defend, indemnify and hold harmless SMS Assist, [JP Morgan] and their respective officers . . . from and against any and all claims . . . arising out of or relating to: (a) [AMR's] performance of or the failure to perform the Contract Duties; (b) a breach of this Agreement by [AMR] . . . ; (c) any negligence or willful misconduct by [AMR] or any of its affiliates; (d) a violation of law . . . .
>
> Indemnification shall apply regardless of whether any of the indemnified parties contributed to the claim by their own negligence.

R. Doc. 43-3 at 12.

11

*Maint., Inc.*, 328 F. Supp. 3d 563, 572 (W.D. La. 2018) (referring to the LOIA as "an almost indistinguishable statute" in terms of its indemnification provision pertaining to oil, gas, or water wells); *Salathe*, 300 So. 3d at 471 (La. App. 5 Cir. 2020) (noting that the LOIA "contains similar prohibitions against indemnity" to the LAIA). The Louisiana Supreme Court in *Meloy v. Conoco*, 504 So. 2d 833, 839 (La. 1987),[29] held that when a court is asked to void an indemnity provision under the LOIA, it may not do so until there has been a determination of the indemnitee's fault or liability. *See also Borman v. Shamrock Energy Sols., LLC*, No. 17-11720, 2019 WL 670402, at *4 (E.D. La. Feb. 19, 2019) (noting that because "there has not yet been a determination regarding whether [the indemnitee] was negligent or at fault (strict liability) for Plaintiff Borman's injuries . . . [the court] cannot determine the enforceability of Defendants' defense and indemnity obligations . . . at this time"). At least one court has held that the same principle applies in the LAIA context. *See Louisiana United Bus. Ass'n Cas. Ins. v. J & J Maint., Inc.*, 328 F. Supp. 3d 563, 571 (W.D. La. 2018).

---

[29]   In *Meloy*, The United States Court of Appeals for the Fifth Circuit certified questions to the Louisiana Supreme Court regarding the application of the LOIA to an indemnity agreement between an oil company and a contractor. *See* 504 So. 2d 833, 834-35.

The Louisiana Supreme Court based its decision in *Meloy* on the principle that "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Id.* at 839. The *Meloy* court further noted that "the indemnitor's obligation for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable." *Id.* The court observed that the LOIA "only prohibits indemnity for cost of defense where there is negligence or fault (strict liability) on the part of the indemnitee." *Id.* at 839. The court concluded that the whether an indemnitee "is free from fault and thus outside the scope of the [LOIA] can only be determined *after* trial on the merits." *Id.* (emphasis added). Citing *Meloy*, courts have held that they are not permitted to void indemnity provisions under the LOIA until there has been a judicial finding as to the indemnitee's liability or fault. *See Durr v. GOL, LLC*, 393 F. Supp. 3d 476, 490 (E.D. La. 2019) ("[T]he LOIA does not apply where the indemnitee is not negligent or at fault, which cannot be determined until after trial on the merits."); *see also Borman*, 2019 WL 670402, at *4 (holding that the court cannot make a determination on the enforceability of an indemnity provision until there has been a finding of negligence or fault on the part of the indemnitee).

The *Meloy* reasoning applies with equal force in the LAIA context.[30] Indeed, the relevant passages of the LOIA and LAIA are nearly identical: the LOIA voids provisions in contracts that indemnify an indemnitee for "loss or liability for damages . . . caused by . . . the sole or concurrent negligence or fault (strict liability) of the indemnitee." La. Rev. Stat. § 9:2780. The LAIA voids provisions that indemnify an indemnitee "for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee." La. Rev. Stat. § 9:2780.1(B). Further, *Meloy*'s reasoning is not predicated solely on the text of the LOIA, but also on the principle that a cause of action for indemnification does not accrue until a court has made a determination of liability. *See Meloy*, 504 So. 2d at 839; *see also Appleman on Insurance Law & Practice Archive* § 4261 (2d. ed. 2011) ("The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured."). This principle applies equally to both statutes.

---

[30]  The Court notes that *Meloy* differentiates between the duty to defend and the duty to indemnify, at least in the insurance context. *See Meloy*, 504 So.2d at 838-39. Here, AMR moves for summary judgment on SMS's third-party complaint, which is for "full defense costs and indemnity." R. Doc. 34 at 2 ¶ 7. The *Meloy* court noted that an action for "defense costs" was part of the action for indemnification. *Id.* at 839.

The Court finds that, because there has not yet been a determination as to SMS's liability or fault, AMR's motion for summary judgment on SMS's claim for defense costs and indemnification is premature. *See Meloy*, 504 So. 2d at 839; *Borman*, 2019 WL 670402, at *4; *J & J Maintenance, Inc.*, 328 F. Supp. 3d at 571. Thus, the Court denies AMR's motion for summary judgment on SMS's third-party complaint for defense costs and indemnification.

### D.  Adding SMS as a Named Insured

AMR moves for summary judgment on a provision in the Agreement that requires AMR to procure general liability coverage and to name SMS as an additional insured on that policy. This argument invokes La. Rev. Stat. § 9:2780.1(C). Section 9:2780.1(C) "renders null, void, and unenforceable, provisions in construction contracts that require an indemnitor to procure liability insurance covering the acts or omissions of an indemnitee." *Salathe*, 300 So. 3d at 469. AMR contends that § 9:2780.1(C) voids the following provision in the Agreement:

> 22. INSURANCE. At all times while performing Work under this Agreement, [AMR] shall maintain, at its sole cost and expense, insurance in a form reasonably satisfactory to SMS Assist with limits of liability and all other requirements not less than stated in this section . . . . All insurance policies shall be primary and non-contributory to any other insurance of SMS Assist or [JP

15

Morgan] . . . . [AMR] shall . . . name[] SMS Assist and [JP Morgan], individually as an additional insured.[31]

The Louisiana Fifth Circuit's analysis in *Salathe v. Parish of Jefferson* is instructive. 300 So. 3d at 460. There, the court considered a contract between Fleming Construction Company and Jefferson Parish, Louisiana. The contract required Fleming to name Jefferson Parish as an additional insured "with respect to comprehensive general liability, automobile liability, and umbrella liability." *Id.* at 464. The *Salathe* court affirmed the trial court's grant of summary judgment under § 9:2780.1(C), holding that the provision was void "to the extent . . . [it could] be interpreted as requiring Fleming to . . . procure insurance coverage for Jefferson Parish's own negligence." 300 So. 3d at 473.

The insurance provision at issue in this case is similar to the one in *Salathe*. It broadly requires AMR to name SMS Assist an "additional insured[]" on its general liability policy. The Agreement provides that the policy must contain "minimum general liability" coverage in the amount of "$1,000,000 each occurrence and $2,000,000 general aggregate."[32] The Agreement also provides that AMR is to bear the "sole cost and expense" of

---

[31] R. Doc. 43-3 at 12-13.
[32] *Id.* at 12.

16

the policy,[33] which places this provision outside any of the statutory exceptions to the LAIA that might render the insurance provision enforceable.[34] The Agreement does not exclude coverage for SMS's own negligence from the scope of insurance to be obtained.

SMS does not offer any relevant counterarguments in its opposition. It points to language in § 9:2780.1(C) which allows an indemnitee to "requir[e] the indemnitor to provide proof of insurance for obligations covered by the contract." La. Rev. Stat. § 9:2780.1(C). SMS does not explain how the Agreement's language, requiring AMR to name SMS as an additional insured on its liability policy, amounts to an obligation requiring AMR to provide "proof of insurance." Accordingly, the Court finds that there is no genuine issue of material fact that the Agreement's requirement that AMR maintain liability insurance naming SMS as an additional insured is void under § 9:2780.1(C). *Salathe*, 300 So. 3d at 473.

---

[33] *Id.*

[34] "[I]f there is evidence that the indemnitor recovered the cost of the required insurance," the LAIA does not void certain contractual provisions. La. Rev. Stat. § 9:2780.1 (I); *see also Atl. Specialty Ins. v. Phillips 66 Co.*, 365 F. Supp. 3d 706, 714 (E.D. La. 2019) (noting that cost-shifting away from the indemnitor is required for the statutory exceptions under § 9:2780.1(I) to apply).

17

## IV. CONCLUSION

For the foregoing reasons, the motion is DENIED IN PART and GRANTED IN PART. Summary judgment is DENIED as to the indemnification-and-defense provision in the Agreement. Summary judgment is GRANTED as to the insurance provision requiring AMR to name SMS as an additional insured on its general liability insurance policy.

New Orleans, Louisiana, this __4th__ day of June, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE