UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENNIS LOUIS RUELLO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-895 |
| JPMORGAN CHASE BANK, N.A., ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is plaintiffs Dennis Ruello and Lori Ruello's motion for a new trial and/or for relief from a final judgment.[1] Defendant JP Morgan Chase Bank, N.A. ("JP Morgan") and third-party defendant SMS Assist, LLC ("SMS") oppose the motion.[2] For the following reasons, the Court denies the motion.

### I.   BACKGROUND

This case arises from a fall that occurred at a branch location of Chase Bank in Metairie, Louisiana.[3] Plaintiffs allege that, on May 21, 2018, while walking on a sidewalk outside of defendant's bank, Dennis Ruello tripped on

---

[1]  R. Doc. 73.
[2]  R. Docs. 74 & 75.
[3]  R. Doc. 1-2.

a sprinkler head and fell to the ground, sustaining injuries.[4] They allege that the sprinkler head's proximity to the sidewalk was a dangerous and hazardous condition.[5] On May 21, 2019, plaintiffs filed suit in Louisiana state court, alleging that defendant's negligence caused Dennis Ruello's injuries.[6] On March 13, 2020, defendant JP Morgan removed the case to federal court, contending that the requirements of diversity jurisdiction under 28 U.S.C. § 1332 were met.[7]

On October 6, 2021, JP Morgan moved for summary judgment on plaintiffs' claims against it,[8] contending that plaintiffs could not show that the sprinkler head posed an unreasonable risk of harm, or that JP Morgan knew or reasonably should have known about the allegedly dangerous condition.[9] JP Morgan further asserted that plaintiffs could not show that the sprinkler head caused Dennis Ruello's fall.[10] Plaintiffs did not file an opposition to JP Morgan's motion.

---

[4]   *Id.* ¶¶ IV-V.
[5]   *Id.* ¶ V.
[6]   *Id.* at 1.
[7]   R. Doc. 1.
[8]   R. Doc. 66.
[9]   R. Doc. 66-2 at 10.
[10]  *Id.* at 10-11.

On December 20, 2021, finding that plaintiffs could not meet their burden on causation, the Court granted JP Morgan's motion.[11] Specifically, the Court examined plaintiff's deposition testimony indicating that he fell to the ground, looked back, and noticed a sprinkler head next to the sidewalk. The Court found this evidence insufficient to show that the sprinkler head caused his fall:

> Ruello's testimony indicates, in all, that when he sat up and looked back, the sprinkler head adjacent to the sidewalk was the only obstruction he noticed. He does not assert any other positive facts supporting the theory that he tripped on the sprinkler head. Ruello's sprinkler-head theory is purely speculative, and "proximate cause may not be established by speculation or conjecture."[12]

The Court therefore granted summary judgment for JP Morgan and dismissed all claims against it.[13]

On January 12, 2022, JP Morgan moved for entry of final judgment based on the Court's summary-judgment ruling.[14] On January 18, 2022, the Court ordered that any opposition to JP Morgan's motion must be filed by January 21, 2022.[15] This deadline passed, and no opposition was filed. On

---

[11]   R. Doc. 68.
[12]   *Id.* at 7 (quoting *Carey v. Hercules Ocean Corp.*, 321 F. App'x 402, 404 (5th Cir. 2009)).
[13]   *Id.* at 10.
[14]   R. Doc. 69.
[15]   R. Doc. 70.

3

January 25, 2022, the Court granted the motion[16] and entered final judgment, dismissing with prejudice plaintiffs' claims against JP Morgan.[17]

On February 22, 2022, plaintiffs filed a motion for a new trial and/or relief from final judgment.[18] Plaintiffs represent that, because of malware affecting counsel's laptop and emails, counsel never received notice of JP Morgan's motion for summary judgment, the Court's order granting summary judgment, or JP Morgan's motion for entry of final judgment.[19] They assert that counsel first became aware of the motions, order, and ultimate dismissal of JP Morgan on January 25, 2022, when the Court entered final judgment.[20]

Plaintiffs' counsel submits two sworn affidavits explaining the problem.[21] In the first affidavit, counsel attests that, in December of 2021, he "became aware that [his] laptop had been experiencing 'glitches,' particularly with respect to e-mails."[22] He supports this assertion by attaching emails between him and another attorney on a different case, in

---

16   R. Doc. 71.
17   R. Doc. 72.
18   R. Doc. 73.
19   R. Doc. 73-2 at 1-2.
20   *Id.* at 1.
21   R. Doc. 73-3 (Affidavit of Dennis P. Couvillion) (Feb. 2, 2022); R. Doc. 73-6 (Supplemental Affidavit of Dennis P. Couvillion) (Mar. 18, 2022).
22   R. Doc. 73-3 ¶ 8.

4

which counsel tells the other attorney that he did not receive multiple emails from her.[23] As to this case, counsel attests that he did not receive email notifications from CM/ECF, the Court's electronic filing system, for any of JP Morgan's filings or the Court's orders leading up to the final judgment.[24] He states that, on January 25, 2022, he received electronic notice of the Court's entry of final judgment, at which point he went back to check for receipt of earlier notices.[25] He states that he "discovered the unopened transmissions from the Court's electronic CM/ECF system" for the summary-judgment order and JP Morgan's motion for entry of final judgment,[26] but emphasizes that these notices "were not present in [his] inbox on the dates they were marked or shortly thereafter."[27] Counsel further attests that notice of JP Morgan's original motion for summary judgment, filed on October 6, 2021, never appeared in his inbox.[28] In a supplemental affidavit, counsel explains that, since the filing of his motion for a new trial, he has discovered that these technical problems "were not just the result of a

---

[23] *See, e.g.*, R. Doc. 73-4 at 4 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:30 AM)) ("[M]y e-mail has been acting funny recently so I'm not totally shocked I didn't receive your[] [email] yesterday. I wouldn't be surprised if it shows up today.").
[24] R. Doc. 73-3 ¶ 7.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

simple software virus being introduced into [his] laptop," but instead was a "full-scale cyber-attack on [his] laptop and iPhone."[29] Counsel states that he has learned that he was the victim of identity theft.[30]

Finally, plaintiffs note that counsel's law office had a COVID-19 outbreak in early December, and that counsel was ill with COVID-19 from December through mid-January.[31] Plaintiffs contend that this period of illness accounts for counsel's delay between discovering his email problem in December, and first addressing the issue in this case in late January.[32] On these grounds, plaintiffs seek relief from the Court's Order and Judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure.[33]

Defendant JP Morgan opposes plaintiffs' motion,[34] and cross-defendant SMS joins in and adopts JP Morgan's opposition.[35] JP Morgan contends that none of plaintiffs' cited reasons, including counsel's technical problems and illness, are sufficient to warrant vacating the Court's Order and Judgment.[36] The Court considers the parties' arguments below.

---

29   R. Doc. 73-6 ¶ 1.
30   *Id.* ¶ 2.
31   R. Doc. 73-2 at 4-6.
32   *Id.* at 5.
33   R. Doc. 73-2 at 5.
34   R. Doc. 74.
35   R. Doc. 75.
36   R. Doc. 74 at 3-7.

## II. DISCUSSION

Plaintiffs cite both Federal Rules of Civil Procedure 59 and 60 in their motion for a new trial. The Court evaluates movants' request under each Rule.

### A. Rule 60(b)

Plaintiffs first seek relief under Rule 60(b), which provides that a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Here, plaintiffs do not specify which of these reasons they believe entitle them to relief from the Court's final judgment. But their arguments sound in the first reason: mistake, inadvertence, surprise, or excusable neglect. The Court's "determination of what sorts of neglect will be

7

considered excusable is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The Court finds that counsel's unawareness of multiple significant motions and orders in this case does not warrant relief under Rule 60(b)(1). The Fifth Circuit is clear that a party has a "duty of diligence to inquire about the status of the case." *Id.* (quoting *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993)). The court has explained that counsel's "[g]ross carelessness . . . [is an] insufficient bas[i]s for 60(b)(1) relief," and that, "[i]n fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness." *Id.* (quoting *Edward H. Bohlin Co.*, 6 F.3d at 357).

Here, plaintiffs' counsel failed at multiple junctures to monitor or inquire about the status of this case. JP Morgan filed its summary-judgment motion on October 6, 2021. That plaintiffs' counsel did not receive notice of the motion on that day might, by itself, be excusable, as it owes to a technical problem that was not counsel's fault. That said, counsel assertedly did not manage to discover these problems until some point in December, despite

8

that, by that time, the issues had been affecting his devices for at least two months, *i.e.*, since at least as early as October 6th. Indeed, the issues seem to have begun well *before* October 6th. Plaintiffs' counsel states in his supplemental affidavit that he experienced intermittent "'glitches' in [his] internet and telephone services" starting in late August and early September, and continuing through October, when the summary-judgment motion was filed.[37] And evidently, counsel's technical problems during this period included non-receipt of emails, as he *never* received notice of JP Morgan's summary-judgment motion, filed on October 6th.[38] The Court notes that this nearly four-month period, during which counsel experienced problems with his internet, phone, and email, is a long time not to notice that something is amiss, and to surmise that these problems could jeopardize counsel's ability to stay apprised of important updates in his clients' cases.

Moreover, once counsel admittedly knew that he had email problems in December of 2021, he did nothing to monitor or inquire about this case. As documented by email evidence submitted by plaintiffs, counsel knew some time before December 21, 2021 that he was having problems receiving emails, and nonetheless took no steps to check on the status of this case.

---

37   R. Doc. 73-6 ¶ 7.
38   R. Doc. 73-3 ¶ 4.

9

Specifically, on December 21, 2021, an attorney in a different case wrote to plaintiffs' counsel: "I just looked over your motion to amend and it states that you have not received a reply from me on whether I objected to the filing of this motion. Please see below my email that I sent you yesterday morning at 9:39am."[39] Counsel replied: "Rachel, I did not receive your e-mail. I don't doubt that you sent it but I'm not shocked because *lately my e-mail has been a bit sketchy*."[40] Counsel then sent Rachel a second email, minutes later, saying, "Sorry . . . the e-mail I was drafting to you simply sent itself . . . As I was saying, my e-mail has been acting funny *recently* so I'm not totally shocked I didn't receive yours yesterday. . . . Had I received your email[,] I certainly would not have represented that you hadn't responded."[41] Counsel then emailed to follow up, stating, "I searched again for your e-mail from yesterday and I never received it. I even checked the spam folder but it was not there either. But again, as I said, I don't doubt that you sent it."[42] Clearly, counsel knew at this point that he was not receiving emails. The problem

---

[39] R. Doc. 73-4 at 2 (Email from Rachel to Dennis Couvillion (Dec. 21, 2021, 10:53 AM)).

[40] *Id.* at 3 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 10:58 AM)) (emphasis added).

[41] *Id.* at 4 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:13 AM)) (emphasis added).

[42] *Id.* at 6 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:22 AM)).

10

then presented itself again, when counsel asked Rachel, "[By the way], what was Mr. Williams' settlement demand?"[43] Rachel responded, "Dennis—I sent you an email yesterday regarding the settlement demand as well. I will resend now."[44] As to the settlement email, counsel replied, "Didn't get that either."[45]

This exchange indicates that plaintiffs' counsel knew that, in at least one of his cases, he had not received *two* important emails from counsel. And the correspondence further suggests that he knew about this problem for some period of time *before* the 21st of December, as he told the attorney on that day that his email had been "sketchy" lately,[46] and "acting funny recently."[47]

Knowing that he was not receiving emails consistently, a reasonably prudent attorney would have checked the status of his cases to determine whether he had missed any important court filings by virtue of this problem.

---

[43] *Id.* at 4 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:13 AM)).
[44] *Id.* at 5 (Email from Rachel to Dennis Couvillion (Dec. 21, 2021, 11:13 AM)).
[45] *Id.* at 7 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:28 AM)).
[46] *Id.* at 3 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 10:58 AM)).
[47] *Id.* at 4 (Email from Dennis Couvillion to Rachel (Dec. 21, 2021, 11:13 AM)).

11

This is especially true here, as it is apparent that the only way that plaintiffs' counsel monitors developments in this case is by email notification from the Court's electronic filing system. Counsel's total failure to check for case updates in light of this knowledge was an abrogation of his "duty of diligence to inquire about the status of the case." *Id.* The problems with counsel's email, which in fact had been going on since October 6th or earlier, and that counsel admittedly knew about before his December 21st emails quoted above, suggest that counsel should have discovered JP Morgan's motion for summary judgment before the Court ruled on it on December 20, 2021.

Moreover, not only did counsel take no corrective action upon this revelation in December, but he also did nothing during *the following five weeks*, through the near end of January, when he received notice of final judgment. And while he represents that he was ill from mid-December until mid-January, illness generally "does not qualify as excusable neglect." *Alverson v. Harrison Cnty.*, 643 F. App'x 412, 416 (5th Cir. 2016). This reason is especially unavailing here, as counsel has failed to explain whether or how his illness prevented him from checking the case docket. He does not state that he was hospitalized or otherwise rendered incapable of exercising his "duty of diligence to inquire about the status of the case." *Id.* Moreover, even if his illness somehow prevented him from inquiring about the case

12

while he was sick, it does not account for his continued inaction *after* his recovery from his illness in mid-January. The Court finds that counsel should have discovered JP Morgan's motion for summary judgment, the Court's Order and Reasons granting summary judgment, JP Morgan's motion for entry of final judgment, and the Court's January 18, 2022 briefing order, all before the Court entered final judgment on January 25, 2022. Missing *all* of these important filings, spanning a three-and-a-half-month period, reflects a serious lapse in diligence on counsel's part. Indeed, when counsel eventually learned on January 25th that the Court had entered final judgment in favor of JP Morgan, it was only because of the fortuitous receipt of an email notification from the Court's electronic filing system—the very type of notification that he had assertedly not received in the previous months. Counsel does not state that this notice resulted from any diligence or inquiry on his part; it instead seems that his email simply functioned properly at the right time.

    Finally, even after discovering on January 25th that the Court had entered judgment dismissing plaintiffs' claims against the only direct defendant in this case, counsel inexplicably waited yet another month before filing a motion to reopen the case. He leaves this last delay entirely unexplained.

In sum, while the technological problems plaguing counsel's laptop and phone are evidently not his own fault, his apparent failure to check the docket for at least three and a half months, and his total inaction upon discovery of his technological problems, are attributable only to him. These circumstances do not amount to the type of "mistake, inadvertence, surprise, or excusable neglect" that might justify relief under Rule 60(b)(1). *Cf. Trevino*, 944 F.3d at 572 (denying Rule 60(b) relief when court email communications were inadvertently sent to counsel's spam folder); *Onwuchekwe v. Okeke*, 404 F. App'x 911, 912 (5th Cir. 2010) ("[I]t was not an abuse of discretion to conclude that sending court communications to the spam folder is inexcusable neglect."). Nor have plaintiffs shown that there is any "other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(6); *Walker v. Transfrontera CV de SA*, 634 F. App'x 422, 431 (5th Cir. 2015) (denying Rule 60(b)(6) relief because counsel's arguments did "not excuse [his] duty to stay apprised . . . of the status of his client's case").

Accordingly, the Court finds that plaintiffs are not entitled to relief from the Court's Order and Judgment under Rule 60(b).

### B. Rule 59

Plaintiffs also move for a new trial under Rule 59(a), which states that a court may grant a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). But in this case, a trial never occurred, and the Court instead resolved plaintiffs' claims on summary judgment. The Court thus construes plaintiffs' Rule 59(a) motion as a motion to "alter or amend the judgment" under Rule 59(e). *See Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996) (holding that a motion for reconsideration styled as a motion for a new trial following summary judgment was properly analyzed as a Rule 59(e) motion to reconsider entry of summary judgment).

Rule 59(e) permits a party to file "a motion to alter or amend a judgment . . . after the entry of the judgment." Fed. R. Civ. P. 59(e). A district court has "considerable discretion" under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). That said, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "The Court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co.*, 6 F.3d at 355.

15

A motion to reconsider under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *In re Life Partner Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). Courts have held that the moving party must show that the motion is necessary based on at least one of the following criteria: (1) "correct[ing] manifest errors of law or fact upon which the judgment is based;" (2) "present[ing] newly discovered or previously unavailable evidence;" (3) "prevent[ing] manifest injustice;" and (4) accommodating "an intervening change in the controlling law." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Mar. 19, 1998).

As to these four criteria, plaintiffs do not contend that reconsideration of the judgment is warranted because of (i) manifest errors of law or fact, (ii) newly discovered evidence, or (iii) a need to accommodate an intervening change in the law. They instead state that the Order and Judgment should be vacated "to prevent an injustice."[48] In this sense, plaintiffs invoke the "manifest injustice" criterion under Rule 59(e).

"There is no general definition of manifest injustice; rather, courts evaluate whether there has been a manifest injustice on a case-by-case

---

48   R. Doc. 73-2 at 5.

16

basis." *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 10-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012). That said, caselaw makes clear that the movant's standard is high. A bankruptcy appellate panel of the U.S. Court of Appeals for the Sixth Circuit summarized some key considerations as to what constitutes "manifest injustice" under Rule 59:

> A movant seeking Rule 59(e) relief must be able to show an error in the trial court that is direct, obvious, and observable. The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered. Essentially, the movant must be able to show that altering or amending the underlying judgment will result in a change in the outcome in their favor.

*In re Cusano*, 431 B.R. 726, 734 (B.A.P. 6th Cir. 2010) (quoting *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009)). While this Court is not bound by this Sixth Circuit authority, these principles serve to illustrate that plaintiffs must make a substantial showing to obtain relief based on "manifest injustice" under Rule 59(e).

Applying this "amorphous concept" to these facts, *In re Henning*, 420 B.R. at 785, the Court finds that plaintiffs have failed to show that reconsideration is warranted to prevent manifest injustice in this case. Plaintiffs do not contend that the Court's dismissal of their claims against JP Morgan is unjust based on the facts or law applicable to this case. *See Templet*, 367 F.3d at 479 (noting that courts considering Rule 59(e) motions

17

should consider "the need to render just decisions on the basis of all the facts"). Indeed, in moving for reconsideration, plaintiffs do not even address the substance of the Court's summary-judgment order. Predictably, then, they have not argued that the Court made a "direct, obvious, and observable" error in granting summary judgment in favor of JP Morgan, or that "altering or amending the underlying judgment will result in a change in the outcome in their favor." *In re Cusano*, 431 B.R. at 734. In sum, plaintiffs' assertion of "injustice" has nothing to do with the law or facts of this case.

Plaintiffs instead assert that it is a "grave injustice" that JP Morgan's motions were decided without oppositions from plaintiffs.[49] But as explained above, plaintiffs' failure to respond to the motions owes to counsel's failure to check the status of the case for many months, including a period when he knew that he was experiencing technical problems involving non-receipt of email notifications. Consistent with the substantial showing required to demonstrate "manifest injustice," courts have recognized that "the negligence or erroneous strategy choices of a party's attorney . . . which contributed to the court's dismissal of the party's claims, do not amount to manifest injustice." *Courtade v. Harrah's Operating Co.*, No. 10-4036, 2011 WL 2446454, at *4 (E.D. La. June 15, 2011) (citing *Robinson v. Wix*

---

49    *Id.*

18

*Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010)). In fact, the U.S. Court of Appeals for the D.C. Circuit has affirmed the denial of a Rule 59(e) motion citing "manifest injustice," based on substantially similar arguments. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291 (D.C. Cir. 2004). There, in the district court, defendant American Airlines filed a motion to dismiss, and plaintiffs never responded. After the court granted the motion, plaintiffs moved for reconsideration under Rule 59(e), asserting that "their counsel failed to receive electronic notice" of the motion to dismiss, and that the court should vacate its judgment "to prevent 'manifest injustice.'" *Id.* 1293. The trial court rejected this argument, and the D.C. Circuit affirmed. Finding that Rule 59(e) did not warrant vacatur of the judgment, the D.C. Circuit explained: "We can hardly say that the district court abused its discretion in declining to vacate its judgment of dismissal to prevent 'manifest injustice' flowing from the appellants' failure to receive notice [of the motion to dismiss] given that . . . the dismissal of their suit might have been avoided through the exercise of due diligence." *Id.* at 1296. Such is the case here, as the dismissal of plaintiffs' claims might have been avoided through the exercise of diligence at *any* point in the three-and-a-half-month period during which counsel failed to learn of multiple significant filings in his clients' case.

19

As the Fifth Circuit has explained, Rule 59(e) relief is an "extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. With no showing that this "extraordinary remedy" is warranted, *id.*, and in the interest of finality, *Edward H. Bohlin Co.*, 6 F.3d at 355, the Court denies plaintiffs' request for relief under Rule 59(e).

Accordingly, the Court finds that neither Rule 60 nor Rule 59 entitles plaintiffs to reconsideration of, or relief from, the Court's December 20, 2021 Order or its January 25, 2022 Judgment. Plaintiffs' motion is denied.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motion for a new trial and/or for relief from a final judgment.[50]

New Orleans, Louisiana, this __10th__ day of May, 2022.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[50] R. Doc. 73.